IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CASE NO. 5:15CR446 |
|     Plaintiff | * | |
| -vs- | * | JUDGE DAN A. POLSTER |
| TERRENCE JOSEPH McNEIL | * | MOTION TO DISMISS |
|     Defendant | * | |
| | * * * | |

Now comes the Defendant, TERRENCE JOSEPH McNEIL, by and through undersigned counsel, who respectfully moves this Court for an order dismissing the within action, all for the reasons set forth in the below Memorandum.

Respectfully submitted,

*/S/ NATHAN A. RAY*
NATHAN A. RAY #0041570
Attorney for Defendant
137 South Main Street, Suite 201
Akron, Ohio 44308
330-253-7171
330-253-7174 fax
burdon-merlitti@neo.rr.com

MEMORANDUM

1. INTRODUCTION

Terrence McNeil has been indicted in a superseding indictment with using social media accounts, which include Facebook, Twitter and Tumblr, all of which are part of the world wide web (www), to threaten and solicit harm to individuals as set forth in the indictment. The

government has further alleged, through the indictment, that beginning in May of 2014 through October of 2015, that there were posts by Mr. McNeil which, while not threatening or soliciting a crime, could be used to establish his intent for posting the information as set forth in counts one through fifteen of the indictment.

Mr. McNeil's basis for his motion to dismiss the indictment in this case is that the indictment fails to set forth the elements of the offenses charged and/or to assert facts which establish an offense.  The indictment in this case is based entirely on the contents of social media.  It includes the use of such web based cites as Twitter, Facebook and Tumbler.  All of these are somewhat recent innovations which has made the world a much smaller place.  For example, "[t]he Word Wide Web (abbreviated WWW or the Web) is an information space where documents and other web resources are identified by Uniform Resource Locators (URLs), interlinked by hypertext links, and can be accessed via the Internet.  English scientist Tim Berners-Lee invented the World Wide Web in 1989." (http://en.wikipedia.org/wiki/World_Wide_Wwb) (citations omitted).

Next came Facebook, a website which "…was launched on February 4, 2004" (https://en.wikipedia.org/wiki/Facebook) (citations omitted).  A brief description of what its capabilities are include the following: "Facebook may be accessed by a large range of desktops, laptops, tablet computers and smartphones over the Internet and mobile networks.  After registering to use the site, users can create a user profile indicating their name, occupation, schools attended and so on.  Users can add other users as 'friends', exchange messages, post status updates and digital photos, share digital videos and links, use various software applications ('apps'), and receive notifications when others update their profiles or make posts.  Additionally, users may join common-interest user groups organized by workplace, school, hobbies or other

topics, and categorize their friends into lists such as 'People From Work' or 'Close Friends'.  In groups, editors can pin posts to stop.  Additionally, users can complain about or block unpleasant people. Because of the large volume of data that users submit to the service, Facebook has come under scrutiny for its privacy policies." (Id.)  (citations omitted).

Next came Tumblr, with a limited description as follows: "Tumblr (stylized on its home page as Tumblr.) is a microblogging and social networking website founded by David Karp in 2007, and owned by Yahoo! Since 2013.  The service allows users to post multimedia and other content to a short-form blog.  Users can follow other user's blogs.  Bloggers can also make their blogs private.  For bloggers, many of the website's features are accessed from a 'dashboard' interface.  As of November 1, 2016, Tumblr hosts over 320.5 million blogs.  As of January 2016, the website had 555 million monthly visitors." (https://en.wikipedia.org/wiki/Tumblr) (citations omitted).

Most recently there was Twitter.  A brief background of which includes the following: "Twitter (/ˈtwiter) is an online news and social networking service where users post and read short 140 character messages called 'tweets'.  Registered users can post and read tweets, but those who are unregistered can only read them…  Twitter was created in March 2006... and launched in July, whereby the service rapidly gained worldwide popularity.  In 2012, more than 100 million users posted 340 million tweets a day, and the service handled an average of 1.6 billion search queries per day.  In 2013, it was one of the ten most-visited websites and has been described as 'the SMS of the Internet'.  As of March 2016, Twitter had more than 310 million monthly active users.  On the day of the 2016 U.S. presidential election, Twitter proved to be the largest source of breaking news, with 40 million tweets sent by 10 p.m. that day." (https://en.wikipedia.org/wiki/Twitter) (citations omitted).

Here, the government has asserted that the posts containing the threats and/or solicitations were received by McNeil from Tumblr and/or Twitter from other individuals who were also on the web.  These postings were then, according to the government, reposted through the use of either Twitter or Tumblr by McNeil.  But what has been left out of the conversation to date is that the contents of the posts as set forth in Counts 1, 2, 3, 4, 5, 6, 7, 8, and 9 were not created by, or ever changed, altered or modified in any way, shape or form by McNeil.  Rather, as is recognized by the government, these posts were simply reposted by McNeil.  As it relates to Counts 10 through 15, once again, the original posts received by McNeil, which the government has allege contain the threats and/or solicitations, were not created by, or ever changed in any way by McNeil.  What is alleged is that McNeil added a sentence prior to reposting the item which stated "don't let this Kafir sleep peacefully."  Because of these repostings, McNeil has been indicted for threats pursuant to 18 U.S.C. § 875(c) and solicitation to commit a crime of violence pursuant to 18 U.S.C. § 373(a).

LEGAL ARGUMENT

A.  Sufficiency of Indictment

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment contain a "plain, concise, and definite written statement of  the essential facts constituting the offense charged…"  The United States Supreme Court has recognized that an indictment must satisfy the Fifth and Sixth Amendments of the United States Constitution and does so "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).  As the Sixth Circuit has noted "to be legally sufficient, the indictment must assert facts which in

law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." *United States v. Superior Grower Supplies, Inc.,* 982 F.2d 173, 177 (6th Cir. 1991).  The Sixth Circuit has found that, "[a]n indictment is usually sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense." *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001) citing *Hamling v. United States*, 418 U.S. 87, 117 (1974).  But as the *Hamling* Court cautioned, while "the language of the statute may be used in the general description of the offense, …it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."  *Id*. at 117-18 (internal quotation marks and citation omitted).

    B.  18 U.S.C. § 875(c)

18 U.S.C. § 875(c) makes it a crime to "...transmit[s] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another."  In *Elonis v. United States*, 135 S.Ct. 2001, 2007 (2015), the Supreme Court noted that, "[t]his statute requires that a communication be transmitted and that the communication contain a threat.  It does not specify that the defendant must have any mental state with respect to these elements.  In particular, it does not indicate whether the defendant must intend that his communication contain a threat."  At the district court, Elonis had moved to dismiss the indictment on the basis that it failed to allege that he had intended to threaten anyone.  The district court denied the motion and found that Third Circuit precedent only required a showing that Elonis "intentionally made the communication, not that he intended to make a threat." *Id*. The Third Circuit Court of Appeals held that the intent required by 875(c) is only the intent to communicate words that the defendant understands, and that a reasonable person would view as

a threat. *Id*.     In reversing the Third Circuit, the Supreme Court stated that "[s]ection 875(c), as noted, requires proof that a communication was transmitted and that it contained a threat.  The 'presumption in favor of a scienter requirement should apply to *each* of the statutory elements that criminalize otherwise innocent conduct.' (citation omitted)  The parties agree that a defendant under Section 875(c) must know that he is transmitting a communication.  But communicating *something* is not what makes the conduct 'wrongful'.  Here 'the crucial element separating legal innocence from wrongful conduct' is the threatening nature of the communication. (citation omitted)  The mental state requirement must therefore apply to the fact that the communication contains a threat." *Id.* at 2008 (emphasis in original)  As the jury instruction in Elonis's case only required that the jury find that he communicated what a reasonable person would consider to be a threat, the Court reversed the conviction.  As the Court noted, "[f]ederal criminal liability generally does not turn solely on the results of an act without considering the defendant's mental state.  That understanding 'took deep and early root in American soil' and Congress left it intact here: Under Section 875(c), 'wrongdoing must be conscious to be criminal." *Elonis*, at 2012 (quoting *Morissette v. United States*, 342 U.S. 246, 252 (1952).

     C.  18 U.S.C. § 373(a)

18 U.S.C. § 373(a), Solicitation to Commit a Crime of Violence makes it a crime when, "whoever, with intent that another person engage in conduct constituting a felony that has an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces or otherwise endeavors to persuade such person to engage in such conduct…"  Under the solicitation statute, the government must prove

two essential elements.  First, the government must establish that the defendant had the intent that another person engage in conduct constituting a felony crime of violence in violation of federal law.  The intent must be shown to be serious by strongly corroborative circumstances.  Second, the government must prove that the defendant commanded, induced or otherwise endeavored to persuade the other person to commit the felony.  *See*, *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999).  In *Talley*, the Sixth Circuit looked to other circuits decisions and the guidelines they have set forth to be used in solicitation cases.  For example, the *Talley* Court looked to *United States v. Gabriel,* 810 F.2d 627, 635 (7th Cir. 1987) (quoting S.Rep. No. 309, 97th Cong.,1st Sess. 183 (1882), wherein the court noted that "[o]ne factor strongly corroborative of intent is, is 'the fact that the defendant offered or promised payment or some other  benefit to the person solicited if he would commit the offense.'" *Talley* at 996.

    3.  INDICTMENT

Counts 1, 4, 7, 10 and 13 allege a violation of 18 U.S.C. § 875(c).  Count 1 involves a repost on September 24, 2015, Counts 4 and 7 involve a repost on September 29, 2015, and Counts 10 and 13 involves a repost of October 3, 2015.  These posts have been around for quite some time on the web before they ultimately found their way to McNeil's social media sites.  And, as set forth above, there was no change to the posts before they were allegedly sent back out on the web where they had been on for years.  Twitter and Tumblr were the means of social media which the government alleges were used for the repostings.  The number of possible times that they were viewed and reposted before they would have been received by McNeil would be astronomical.  As set forth above, Tumblr hosts over 320.5 million blogs and as of January 2016, the website had 555 million monthly visitors and, as of March 2016, Twitter had more than 310 million monthly active users.

In order to state an offense pursuant to 18 U.S.C. § 875(c), the communication must contain a threat, and as the Sixth Circuit has noted "[f]ederal criminal liability generally does not turn solely on the results of an act without considering the defendant's mental state." *United States v. Houston*, 792 F.3d 663, 666 (6th Cir.2015) (quoting *Elonis, supra*, at 2012).  Count 1 contains the language of "[k]ill them in their own lands, behead them in their own homes, stab them to death as they walk their streets thinking that they are safe….and kill them wherever you find them."  While it contains the wording that it does, the statute still requires that McNeil act with the intent to threaten.  Here, counts 4 and 7 do not include a threat.  As the indictment sets forth, the repost reads as follows: "RT @_cyber_caliphat:[Arabic writing] Wanted to kill New Name…"  This is all that is included in the post to establish a threat.  Counts 10 and 13 do not include a threat.  As the indictment sets forth, the posts read as follows: "Released – Address of the US Navy Seal….who killed Sheikh Osama Bin Laden R.A. - #GoForth#RunRobertRun….I am posting the address to brothers & to Al Qaeda in the U.S. as a number one target."  It does not contain a threat as required pursuant to § 875(c).  In Count 13, the government has alleged an addition to the post with the words "don't let this kafir sleep peacefully."  Once again, this does not contain a threat. As recognized by the *Elonis* Court, "[s]ection 875(c), as noted, requires proof that a communication was transmitted and that it contained a threat." *Supra*, at 2008.

Counts 2, 5, 8, 11 and 14 allege a violation of 18 U.S.C. § 373(a).  Count 2 involves a repost on September 24, 2015, Counts 5 and 8 involve a repost on September 29, 2015, and Counts 11 and 14 involves a repost of October 3, 2015.   The posts contained in the indictment herein do not expressly solicit or endeavor to persuade another person to harm the individuals listed in the posts, rather they contain information about the people.  And, as set forth above, these were not posts created by McNeil.  In *United States v. Talley, supra*, the Sixth Circuit

addressed solicitation pursuant to § 373.  There the defendant had raised the question as a sufficiency argument.  In rejecting the claim the court noted that "[o]ne factor strongly corroborative of intent, is 'the fact that the defendant offered or promised payment or some other benefit to the person solicited if he would commit the offense.'" *Id.* at 996.  Here, the indictment is devoid of any indication of a solicitation on the part of McNeil.

Counts 3, 6, 9, 12 and 15 allege a violation of 18 U.S.C. § 119.  The statue requires that the posts be made with the intent to threaten, intimidate and incite or facilitate the commission of a crime of violence.  A full reading of the reposts establishes that there is no indication of McNeil's intent to threaten or solicit.  Further, the indictment fails to meet the elements of the statutes in that they do not contain the necessary elements, such as a threat or solicitation.

Mr. McNeil would request that this Court dismiss the indictment.

*/S/ NATHAN A. RAY*
NATHAN A. RAY
Attorney for Defendant

PROOF OF SERVICE

I hereby certify that on December 8, 2016, a copy of the foregoing Motion to Dismiss was electronically filed.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

*/S/ NATHAN A. RAY*
NATHAN A. RAY
Attorney for Defendant